Filed 2/20/26  P. v. Burns CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>WALTER BURNS,<br><br>    Defendant and Appellant. | B338048<br><br>(Los Angeles County<br>Super. Ct. No. BA269767) |

APPEAL from a post-judgment order of the Superior Court of Los Angeles County, Mark K. Hanasono, Judge.  Affirmed.

Unite the People and John Martin Lathrop for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Scott A. Taryle and Lauren Sanchez, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Defendant Walter Burns asserts the 2019 changes to the law of homicide, which eliminated several imputed-malice theories of culpability, undermine his 2005 conviction of first-degree murder and entitle him to resentencing under Penal Code section 1172.6 (further statutory references are to the Penal Code unless specified).  That provision affords resentencing to those convicted of certain homicide crimes who could not be convicted today because of the 2019 changes to the law.  The trial court denied Burns's resentencing petition at the prima facie stage, viewing the jury instructions and the jury's findings as establishing Burns himself intentionally killed the victim and precluding Burns's assertion that his conviction was under a tainted imputed-malice theory.  We affirm.

## BACKGROUND

### 1.  The Killing

We first offer a brief reprise of facts jurors heard in Burns's trial, which our prior opinion affirming Burns's conviction more fully sets forth.  (*People v. Burns* (Aug. 1, 2007, B189644) [nonpub. opn.].)  In doing so, we do not take a position on the veracity of any particular facts.  (See *People v. Lewis* (2021) 11 Cal.5th 952, 972 (*Lewis*) [when evaluating a resentencing petitioner's prima facie showing, a "court should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion' "].)

Jomo Robbins was shot and killed near Burns's house.  Three eyewitnesses testified.  One neighbor, testifying for the prosecution, saw Burns shoot Robbins.  From his window, this neighbor saw Burns and Robbins arguing in front of Burns's house.  Burns began "trying to provoke this guy to — I guess to fight or something, because the guy, you know, started screaming

2

again and saying things, you know, loud, and you could hear that." The neighbor could not hear the words Burns said, but he heard Robbins respond loudly and aggressively, " 'You're disrespect [*sic*] my family' or 'You disrespect me,' something like that." The neighbor then saw Burns move back several steps, take a gun from his waist area, point it at Robbins, and fire three or four times. After Robbins fell, Burns took a step closer and fired at him four or five more times.

Another neighbor, also testifying for the prosecution, corroborated the first neighbor's testimony. This second neighbor heard four or five gunshots while inside his home. He moved to a window and saw Burns holding what appeared to be a gun, which Burns then tucked into his waistband.

Burns's acquaintance of 26 years, testifying for the defense, saw Robbins being shot while visiting a relative's nearby home. This acquaintance had gone outside to light a cigarette and saw Burns standing across the street. Nine or 10 gunshots sounded. "I lit my cigarette. I seen him standing clearly across the street. When the gunshots rang out, [Burns] was standing here, and he ran that way."

### 2. The 2005 Trial and Appeal

The People charged Burns with Robbins's murder (§ 187, subd. (a)), and alleged Burns, in committing that offense, had personally and intentionally discharged a firearm, causing great bodily injury or death (§ 12022.53, subd. (d)); had personally and intentionally discharged a firearm (§ 12022.53, subd. (c)); and had personally used a firearm (§ 12022.53, subd. (b)).

The superior court instructed jurors on murder and malice aforethought pursuant to CALJIC Nos. 8.10 and 8.11. The court explained, giving CALJIC No. 8.20, that a deliberate and

premeditated murder was of the first degree. It offered no other theories of first-degree murder. The court then explained, giving CALJIC Nos. 8.30 and 8.31, that unpremeditated, undeliberated murder or a killing resulting from an unlawful act dangerous to life were murders of the second degree.

The jury convicted Burns of first-degree murder. The jury also found true all three firearms allegations. The court sentenced Burns to 50 years to life. This court affirmed the judgment. (*People v. Burns*, *supra*, B189644.)

### 3. Resentencing Proceedings

On September 19, 2022, Burns filed a petition for resentencing in the superior court. That court denied Burns's petition for failing to make a prima facie case for relief. (See § 1172.6, subd. (c).) It concluded the jury "instructions did not permit the jury to convict [Burns] of murder under theories of felony murder, the natural and probable consequences doctrine, or any other theory of imputed malice based on his mere participation in the crime."

### 4. Appeal

Burns timely appealed.

DISCUSSION

## I. Resentencing Under Section 1172.6

"In 2018, after [Burns's] conviction and sentencing, the Governor signed Senate Bill No. 1437, making, effective as of January 1, 2019, ameliorative changes to our state's homicide law. (See *People v. Gentile* (2020) 10 Cal.5th 830, 846.) As part of these ameliorative changes, malice, a key element the People must prove in a murder prosecution, may no longer be imputed to a defendant solely because the defendant participated in another crime. (*Gentile*, at p. 846; § 188, subd. (a)(3); Stats. 2018,

4

ch. 1015, § 2 (Sen. Bill No. 1437).)  This means, for instance, that a defendant is no longer guilty of murder as an aider and abettor solely because the 'natural and probable consequences' of that other crime included a confederate's commission of murder. (*Gentile*, at p. 842; see *id.* at pp. 842–843.)" (*People v. Patton* (2025) 17 Cal.5th 549, 558 (*Patton*).)  These ameliorative changes apply retroactively through the resentencing process set forth in section 1172.6.  (*Ibid.*)

"A person convicted of felony murder or murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime . . . may file a petition with the court that sentenced the petitioner to have the petitioner's murder . . . conviction vacated and to be resentenced on any remaining counts when" three conditions apply.  (§ 1172.6, subd. (a).)  As relevant here:  First, the charging document "allowed the prosecution to proceed under a theory . . . [in] which malice is imputed to a person based solely on that person's participation in a crime."  (§ 1172.6, subd. (a)(1).)  Second, petitioner was convicted of the murder charge or accepted a plea offer in lieu of trial on such a charge.  (*Id.*, subd. (a)(2).)  And third, "petitioner could not presently be convicted of murder because of" the changes to homicide law effective in 2019.  (*Id.*, subd. (a)(3).)

Upon receipt of a facially sufficient petition — along with briefing in opposition or support — the superior court holds a hearing to determine whether a petitioner has made a prima facie case for relief.  (§ 1172.6, subd. (c).)  If so, the court issues an order to show cause and then holds an evidentiary hearing.  (§ 1172.6, subds. (c) & (d)(1).)  If not, the petition may be denied so long as the superior court provides a written statement of

reasons.  (§ 1172.6, subd. (c); see generally *Patton*, *supra*, 17 Cal.5th at pp. 559, 562.)

The record of conviction informs the prima facie determination.  (*Lewis*, *supra*, 11 Cal.5th at p. 971.)  The record may include "the trial evidence, the jury instructions, and closing arguments of counsel" (*People v. Lopez* (2022) 78 Cal.App.5th 1, 13 (*Lopez*)), as well as " 'the jury's verdicts, and the factual findings they necessarily reflect' " (*People v. Morales* (2024) 102 Cal.App.5th 1120, 1131, italics omitted, quoting *People v. Curiel* (2023) 15 Cal.5th 433, 465 (*Curiel*)).  The superior court may not engage in factfinding, weigh the evidence, or make credibility determinations at the prima facie stage.  (*Lewis*, at p. 972.)

We independently review a trial court's conclusion that a petitioner failed to make a prima facie case for relief.  (*Lopez*, *supra*, 78 Cal.App.5th at p. 14.)

## II.  The Superior Court Properly Denied Burns's Petition at the Prima Facie Stage.

Burns has not made a prima facie showing, and dismissal of his petition was proper, because the record of conviction conclusively demonstrates that he was not convicted under an imputed malice theory (§ 1172.6, subd. (a)) and that his conviction survives the 2019 homicide law changes (§ 1172.6, subd. (a)(3)).

"A petitioner is ineligible for resentencing as a matter of law if the record of conviction conclusively establishes, with no factfinding, weighing of the evidence, or credibility determinations, that . . . the petitioner was the actual killer, or . . . the petitioner acted with malice aforethought that was not imputed based solely on participation in a crime." (*Lopez, supra,*

6

78 Cal.App.5th at p. 14; see *Patton, supra*, 17 Cal.5th at p. 563 [citing *People v. Delgadillo* (2022) 14 Cal.5th 216, 233, in which a petitioner could not make a prima facie showing when "petitioner was the 'only participant in the killing,' [and so] he was not convicted under an invalid theory"].)

Jurors convicted Burns of first-degree murder, and the only way for jurors to do so, given the jury instruction, was to find a willful, deliberate, and premeditated killing. The jury rejected murder in the second degree, and, furthermore, the jury expressly found Burns personally and intentionally shot Robbins in committing the murder given its findings on the gun enhancements. (See, e.g., § 12022.53, subd. (d) [requiring a finding that the defendant "personally and intentionally discharge[d] a firearm and proximately cause[d] great bodily injury . . . or death"].)

Further, the jury was not instructed on any theory of murder culpability that involved imputed malice or that Senate Bill No. 1437 abrogated. (*People v. Harden* (2022) 81 Cal.App.5th 45, 52 ["[I]f the record shows that the jury was not instructed on either the natural and probable consequences or felony-murder doctrines, then the petitioner is ineligible for relief as a matter of law."].) The court's jury instructions did not permit a conviction based on the felony-murder rule, the natural and probable consequences doctrine related to aiders and abettors, or any other imputations of malice. Nor was Burns charged with any target crimes that might have undergirded such theories. Burns's conviction thus has no defect that Senate Bill No. 1437 sought to rectify.

Burns contends otherwise, directing us to the inclusion of the phrase "natural consequences of the act" within the jury

instructions addressing implied malice and second-degree murder.  But " '[t]he use of the term "natural consequences" in the . . . definition of implied malice does not import into the crime of murder . . . the distinct "natural and probable consequences" doctrine developed in the context of aiding and abetting liability.' " (*People v. Carr* (2023) 90 Cal.App.5th 136, 144 (*Carr*), quoting *People v. Martinez* (2007) 154 Cal.App.4th 314, 334.) " '[I]mplied malice is not imputed malice.' " (*People v. Love* (2025) 107 Cal.App.5th 1280, 1289, quoting *Carr*, at p. 139.)  And Senate Bill No. 1437's ameliorative changes did not affect the quoted language in these instructions.  (See *People v. Clements* (2022) 75 Cal.App.5th 276, 288–299; *Carr*, at pp. 141–145 [explaining the difference between the now-abrogated doctrine and the "natural consequences" language used elsewhere in homicide law].)  Moreover, by finding first-degree murder and rejecting second-degree murder, the jury rejected implied malice in favor of premeditation and deliberation, thus the definition of implied malice seems to be of no bearing here.  (Cf. *People v. Rivera* (2021) 62 Cal.App.5th 217, 231 [tying implied malice to second-degree murder, not to first-degree premeditated murder].)

Finally, we decline Burns's invitation to revisit, at the prima facie stage of this resentencing matter, the jury's weighing of the trial evidence implicating him as the shooter, which it plainly credited.  The jury's findings are conclusive on us in this matter.  (*Curiel, supra*, 15 Cal.5th at pp. 460, 471 [issue preclusion applies in section 1172.6 resentencing proceedings].)

### III.   No Relief Under Section 1172.1 is Available.

Burns contends that even if section 1172.6 resentencing is unavailable, he should have been given the opportunity to pursue resentencing under section 1172.1 because he has shown

8

reformed conduct while serving his sentence.  Section 1172.1 now allows a court to resentence a defendant on its own motion "at any time if the applicable sentencing laws at the time of original sentencing are subsequently changed by new statutory authority or case law."  (§ 1172.1, subd. (a)(1); Assem. Bill No. 600 (2023-2024 Reg. Sess.).)  But section 1172.1 expressly denies defendants the right to make such requests, and trial courts have no obligation to respond to them.  (§ 1172.1, subd. (c) ["A defendant is not entitled to file a petition seeking relief from the court under this section.  If a defendant requests consideration for relief under this section, the court is not required to respond."].)  Even if we were to construe Burns's mention of section 1172.1 below as a request for relief under that statute, and even if we were to construe the superior court's silence as an order summarily declining to consider that request, we would find that order is not appealable.  (*People v. Hodge* (2024) 107 Cal.App.5th 985, 996; *People v. Faustinos* (2025) 109 Cal.App.5th 687, 696–697.)

## DISPOSITION

We affirm the order denying resentencing.


SCHERB, J.

We concur:


STRATTON, P. J.


VIRAMONTES, J.

9